CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 19-1603

RANDY MCCAA,

        *Plaintiff-Appellant*,

*v.*

TODD HAMILTON, et al.,

        *Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:16-cv-00175-JPS — **J.P. Stadtmueller**, *Judge*.

_____

SUBMITTED APRIL 10, 2020[*] — DECIDED MAY 20, 2020

_____

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff Randy McCaa is a Wisconsin prisoner who alleges that prison officials violated his

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Fed. R. App. P. 34(a)(2)(C).

Eighth Amendment rights by responding with deliberate indifference to his threats to commit suicide or to harm himself in other ways. The district court granted summary judgment for defendants over McCaa's pro se efforts to oppose the motion. In *McCaa v. Hamilton*, 893 F.3d 1027, 1034–35 (7th Cir. 2018), we ruled that in denying plaintiff's fourth motion for recruitment of counsel, the district court had not addressed sufficiently McCaa's ability to present his case himself. The district court had already denied earlier requests by McCaa to recruit counsel. We were most concerned about the effects of McCaa's transfer to a different prison where he said he could not locate witnesses or obtain other discovery, as well as the effects of his fifth-grade reading level and serious mental illness. We remanded with instructions to the district court to reconsider recruitment of counsel, but we pointedly did not say that recruitment of counsel would be required.

On remand, the district court took a fresh look at the issue and reached the same decision to not attempt to recruit counsel. McCaa has appealed again, arguing that the district court failed to comply with our mandate. We affirm. Judge Stadtmueller wrote a detailed and persuasive opinion explaining why he did not think this was an appropriate case for attempting recruitment of counsel. He complied with our mandate and did not abuse his discretion in reaching that decision.

As recounted in our prior opinion, 893 F.3d at 1030–31, McCaa sued prison officials for violating the Eighth Amendment through their deliberate indifference to his risk of suicide and self-harm. The district court denied McCaa's requests to recruit counsel and simultaneously granted the defendants' motion for summary judgment when it denied McCaa's renewed request in 2016. The court decided that

No. 19-1603 3

McCaa's lack of adequate evidence and his failure to comply with local rules regarding summary judgment (specifically, to cite his evidence properly) doomed his case. *Id.* at 1033–34.

We ruled that the district court had abused its discretion in denying McCaa's motion for counsel. McCaa had made reasonable efforts to find counsel, so we said that that "inquiry is not at issue." *Id.* at 1031–32. But the district court had failed to undertake the critical inquiry into McCaa's discovery skills because, after his transfer to another prison, he could not "locate witnesses," *id.* at 1033, and his other discovery efforts were "unfruitful." *Id.* at 1034. He also no longer had the help that he earlier received from another prisoner, *id.* at 1033, so we directed the district court to examine McCaa's "personal ability to litigate the case, versus the ability of the 'jailhouse lawyer.'" *Id.*

We remanded the case in 2018. The district court told the parties that if McCaa still desired counsel, he needed to renew his request. Both McCaa and the defendants filed updated briefing on the motion for counsel. The court declined again to recruit counsel and simultaneously reinstated summary judgment. In its ruling, the court discussed the difficulties that district courts face in recruiting counsel and the practical problems it sees in our cases addressing recruitment of counsel. The court gave two independent reasons for refusing to recruit a lawyer for McCaa. First, on remand, McCaa did not renew his own efforts to obtain counsel. Second, several factors suggested that McCaa could adequately litigate this case, even after his prison transfer. He could "send and receive correspondence, make copies, write motions and briefs, and perform legal research;" his reply in support of his renewed motion for counsel was impressive; and he had recently obtained

a GED and now reads at a ninth-grade level. We affirm on the basis of the second ground; we need not address the first.

On appeal, McCaa argues that the district court refused to comply with our mandate. He contends that the mandate required the court to assess whether, after his prison transfer, he could on his own obtain the discovery that he needed. "The mandate rule requires a lower court to adhere to the commands of a higher court on remand." *Carmody v. Bd. of Trustees of University of Illinois*, 893 F.3d 397, 407 (7th Cir. 2018). We review de novo whether the district court complied with our mandate on remand. See *EEOC v. Sears*, 417 F.3d 789, 795 (7th Cir. 2005). We conclude that it did comply here.

Parties do not have a legal right to court-appointed counsel in federal civil litigation. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007) (en banc). Congress gave district courts discretion to recruit lawyers to represent indigent clients on a volunteer basis under 28 U.S.C. § 1915(e)(1), but the statute does not require district courts to recruit counsel for indigent prisoners. Case law guides a district court's discretionary decision. In deciding whether to recruit counsel for an indigent prisoner, a district court must ask two questions: first, whether the prisoner reasonably attempted to obtain counsel (or was effectively precluded from doing so); and second, whether, "given the difficulty of the case," the prisoner is "competent to litigate it himself." *Pruitt*, 503 F.3d at 654. As we explained in our prior decision in this case, the inquiry into the plaintiff's competence and the difficulty of the case should be particularized to the person and the case. 893 F.3d at 1032, quoting *Pruitt*, 503 F.3d at 656.

No. 19-1603 5

The federal courts have benefited from a long and generous tradition in the legal profession of voluntary *pro bono publico* work on behalf of clients who need representation as a practical matter but who cannot afford it in the private market, even on a contingent-fee basis. See, e.g., *Gideon v. Wainwright*, 372 U.S. 335 (1963) (future Justice Abe Fortas represented petitioner Gideon in case establishing right to appointed counsel in felony prosecutions); *Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 889 (7th Cir. 2012) (en banc) (thanking recruited counsel for excellent representation of pro se plaintiff). The tradition is older than the Nation or its courts. In one famous example, John Adams represented British soldiers pro bono in the colonial Massachusetts prosecution arising from the 1770 Boston Massacre.

Civil cases brought by prisoners challenging the conditions of their confinement pose special challenges for the courts and the legal profession. If the prisoner's cost of legal representation is zero, demand for legal representation can rise toward infinity. Prisoners' civil cases can range from compelling and literally vital, with life-and-death stakes, to frivolous distractions from the drudgery of prison life. Compare, e.g., *Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372 (7th Cir. 2017) (en banc) (prisoner died from starvation, acute renal failure, and associated conditions five weeks after entering prison), with Puplava, *Peanut Butter and Politics: An Evaluation of the Separation-of-Powers Issues in Section 802 of the Prison Litigation Reform Act*, 73 Ind. L. J. 329, 330–31 (1997) (summarizing congressional debates over PLRA, including infamous suit by prisoner who was served crunchy peanut butter instead of smooth).

We agree with the district court that the *Pruitt* decision to try to recruit counsel can and should be informed by the realities of recruiting counsel in the district. The Eastern District of Wisconsin uses a volunteer panel of attorneys rather than an involuntary appointment system, as some other district courts do. The veteran judge wrote here that "it is incredibly difficult to convince local lawyers to take such cases." We must also recognize that district courts face a greater challenge in recruiting counsel than this court. Our court recruits from attorneys throughout the circuit, including Chicago, and we can also draw on attorneys from all over the nation. We generally have an easier time convincing counsel to take on appeals, with their paper records and limited scope, than district courts have in recruiting counsel to litigate a case through discovery, motion practice, and trial. District-court cases are often longer-term and more expensive commitments. Given an appeal's relative advantages, we recruit scores of volunteer attorneys every year to handle civil appeals in which a party (often a prisoner) has no constitutional right to counsel. By comparison, as the district court noted here, in 2018 the Eastern District of Wisconsin received 549 prisoner cases; "well over a third of the District's new case filings are submitted by unrepresented inmates."

District courts are thus inevitably in the business of rationing a limited supply of free lawyer time. Nothing in *Pruitt* or our other cases on recruiting counsel prohibits a judge from using available information and the judge's experience to assess the importance and potential merits of the case and to assign priority accordingly. A judge might reasonably decide to give priority to a prisoner who makes a plausible claim that necessary surgery is being delayed unreasonably over another prisoner's claim that a much less serious condition was

No. 19-1603 7

ignored. In this case, McCaa says he threatened suicide, but his case primarily concerns four incidents in which he managed to obtain sharp objects that he used to inflict only superficial cuts to his arms, which did not require stitches. And unfortunately, in many cases where a prisoner suffers from serious mental illness, the illness may distort the prisoner's assessment of his claims and may impair the credibility of those claims.

The difficulty inherent in recruiting an attorney to take a prisoner's civil case pro bono with no expectation of compensation, along with a substantial volume of pro se prisoner litigation meant that the district court in this case was forced to consider how its scarce resource of volunteer lawyers should be best distributed. See *Wilborn v. Easley*, 881 F.3d 998, 1008–09 (7th Cir. 2018) (district court did not abuse discretion by not trying to recruit second volunteer lawyer after contacting over 400 lawyers in Southern District of Illinois). Given these challenges, the district court was entitled to consider the needs of pro se litigants as a whole and to weigh how McCaa's own work and needs for recruited counsel compared to those of other pro se prisoners.

With this broader context in mind, we are satisfied that the district court adequately inquired into McCaa's personal ability to litigate a case of this complexity. To be sure, as the district court recognized and we have often said, claims alleging deliberate indifference to prisoner safety and health can be complex and difficult for a prisoner to litigate pro se. E.g., *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010); *Pruitt*, 503 F.3d at 655–56. But this case was relatively straightforward—McCaa had to prove that the defendants were aware of a risk

8                                                        No. 19-1603

of serious self-harm and failed to take reasonable steps in response to the danger. Although some state-of-mind issues may involve subtle questions too complex for pro se litigants, in this case, the subtlety of this question in this case was not beyond McCaa. The district court noted that McCaa did not lose at summary judgment for lack of understanding that he had to establish the defendants' knowledge or intentions. His filings show that he knew he had to show that the defendants were aware of the real risk of serious self-harm. Nor did McCaa lose for a lack of evidence or an inability to present cogent arguments. He lost because he did not comply with the summary judgment rules, of which he had sufficient notice, that required him to cite his evidence.

    The district court's inquiry into McCaa's competence to litigate this case was detailed and thorough. The court paid particular attention to McCaa's recent briefing on remand regarding his motion for counsel, noting that his opening brief had been edited carefully to include appropriate arguments and citations to evidence. McCaa's reply brief, which the court determined was "entirely" in McCaa's own words, offered detailed arguments based on a "careful assessment of Defendants' evidence and a marshalling of Plaintiff's own evidence." (McCaa's jailhouse lawyer had been separated from him in 2016, so the district court reasonably inferred that McCaa's recent briefing was completed without jailhouse assistance.)

    With respect to McCaa's discovery skills, the district court noted that McCaa had moved to compel discovery and attached his discovery requests, the materials produced by the defendants, and their correspondence regarding discovery. His reply to the defendants' response suggested how the defendants could and should have done more to produce the

No. 19-1603                                                                 9

desired information. The district court reasonably concluded from this briefing that McCaa had shown sufficient ability to conduct discovery. His problems with discovery could be traced to his choice not to raise complaints with the court during the discovery period rather than to any lack of sophistication or legal knowledge.

The court also gave adequate attention to McCaa's education and mental health, which figured prominently in our earlier remand. See also *Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014). The court noted that McCaa's education had improved from a fifth-grade to ninth-grade reading level, which is above that "normally seen in prisoner litigants." McCaa insisted that his mental health issues (he has been diagnosed with bipolar and unspecified depressive disorders) affected his litigation efforts. But we agree with the district court that McCaa did not clearly explain how his mental health affected his ability to litigate, especially in the face of his well-organized briefs, one of which the court deemed "one of the best prisoner-prepared legal documents the Court has read in years."

Nor did McCaa's transfer to another prison require recruitment of counsel. We remanded in 2018 on the ground that the district court had not sufficiently considered this relevant factor. McCaa insists that he was unable to "identify[], locat[e], secure] favorable witnesses" because of his transfer, but he does not explain whom he sought and what testimony he needed. As the district court observed, and as McCaa's briefing shows, McCaa could still "send and receive correspondence, make copies, write motions and briefs, and perform legal research." What McCaa required was proof that the defendants were aware that he posed a risk of self-harm

and ignored this risk, so talking to prisoners at his former institution would be unlikely to "give him insight into the minds of prison officials." *Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014). He did not have to be at his former prison to serve document requests and interrogatories (which he did serve in this case) to obtain some evidence of the defendants' state of mind. *Id.*[1]

In the end, the difficult mix of factors weighing for and against recruiting counsel for McCaa required a thoughtful exercise of discretion by the district court. Judge Stadtmueller provided such consideration. He did not abuse his discretion in denying McCaa's renewed motion and in reinstating the earlier grant of summary judgment against McCaa.

The judgment of the district court is AFFIRMED.

---

[1] The litigation of this case occurred before courts, prisons, and jails had to adapt to the current pandemic. Our views of prisoners' abilities to litigate from prison have been based in part on conditions that may no longer apply, and that may not apply for some time. These include the ability of prisoners to send and receive mail and packages, to visit the law library, or even to consult with other prisoners for help. It may be that during this crisis, courts need to adjust our expectations and adapt to new conditions in such cases, including flexibility on non-jurisdictional deadlines and perhaps additional efforts to recruit counsel. At bottom, we rely heavily on the sound discretion, experience, and common sense of district judges to adapt to these challenges.

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov



## FINAL JUDGMENT

May 20, 2020

Before:

      MICHAEL S. KANNE, *Circuit Judge*

      ILANA DIAMOND ROVNER, *Circuit Judge*

      DAVID F. HAMILTON, *Circuit Judge*

| | |
|---|---|
| No. 19-1603 | RANDY MCCAA,<br>Plaintiff - Appellant<br><br>v.<br><br>TODD HAMILTON, Doctor, et al.,<br>Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 2:16-cv-00175-JPS<br>Eastern District of Wisconsin<br>District Judge J. P. Stadtmueller | |

      The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse  
Room 2722 - 219 S. Dearborn Street  
Chicago, Illinois 60604



Office of the Clerk  
Phone: (312) 435-5850  
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

June 11, 2020

To: Gina M. Colletti  
UNITED STATES DISTRICT COURT  
Eastern District of Wisconsin  
Milwaukee , WI 53202-0000

| No. 19-1603 | RANDY MCCAA,<br>Plaintiff - Appellant<br><br>v.<br><br>TODD HAMILTON, Doctor, et al.,<br>Defendants - Appellees |
|---|---|

**Originating Case Information:**

District Court No: 2:16-cv-00175-JPS  
Eastern District of Wisconsin  
District Judge J. P. Stadtmueller

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:     No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this

period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                                              **Received by:**

_____06/11/20_____                      _____s/ Jelena Vekic_____

form name: **c7_Mandate**(form ID: **135**)